Christine MALONE, as mother and next friend of John Kuri, a minor, Plaintiff,

v.

BIC CORPORATION, a foreign corporation, Defendant.

No. 91 C 5068.

United States District Court, N.D. Illinois, E.D.

April 14, 1992.

Robert James Pavich, Mary Gerard Broderick, Monico, Pavich & Spevack, Chicago, Ill., for plaintiff.

Jeffrey Mark Rubin, David Alan Bonoma, Pope & John, Ltd., Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is the motion of BIC Corporation ("defendant"), pursuant to Federal Rule of Civil Procedure 56, for summary judgment. For reasons stated below, the court denies the motion.

## FACTS

John Kuri ("John"), on March 4, 1988, was a six year old boy and an Illinois resident. It is not entirely clear how, but it is certain that on that day John discovered and began to play with a brightly-colored Mini–BIC lighter ("the lighter") that someone in his family had brought home. As he was doing so, he manipulated it, igniting his clothing and causing second degree burns on his chest, arms, and legs.

John filed suit against the defendant, a foreign corporation, in this court alleging diversity jurisdiction and the applicability

of Illinois law. The complaint was based upon three legal theories: strict liability, negligence, and willful and wanton conduct. The strict liability count alleged that defendant's product was not properly designed to prevent a child under age eight from igniting it and not properly designed because the lighter was made of shiny and brightly colored surfaces. In the next count, John alleged that defendant negligently or carelessly designed the lighter so that it was not child-resistant and failed to provide adequate warnings to prevent children from playing with it. In the willful and wanton count, John claimed that defendant knew of problems with the lighter for many years and did nothing.

■ Early in the litigation, defendant moved for a stay of discovery which the court granted over plaintiff's objections. Defendant then moved for summary judgment. In the motion, defendant stipulated that on the date John was injured (1) it was feasible to design and manufacture a child-resistant Mini–BIC lighter and (2) it was reasonably foreseeable that a child of John's age could obtain and operate a Mini–BIC lighter.[1] This stipulation attempts to strip this case of all factually-related issues and leave the court with a question of law: whether a manufacturer of a disposable selectively actuatable lighter has a duty to incorporate design changes that would make the lighter child-resistant to a child of John's age or change its warnings in any respect.

## DISCUSSION

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). *See also Capital Options Inv., Inc. v. Goldberg Bros. Commodities, Inc.*, 958 F.2d 186, 188 (7th Cir.1992). Notwithstanding a mandate to draw all reasonable inferences in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992), a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). Nor will some metaphysical doubt suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Moreover, the disputed facts must be those that might affect the outcome of the suit to properly preclude summary judgment, *First Ind. Bank v. Baker*, 957 F.2d 506, 507–08 (7th Cir.1992) (citation omitted), and a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

■ A seller who places his product in the stream of commerce has a non-delegable duty to make sure his product is reasonably safe. *Doser v. Savage Mfg. & Sales, Inc.*, 142 Ill.2d 176, 188, 154 Ill.Dec. 593, 598, 568 N.E.2d 814, 819 (1990). That

---

1. The stipulation admits, for the purposes of the motion, that it was foreseeable that a child of John's age could obtain and operate a Mini–BIC lighter. In the abstract, everything is foreseeable. *But see Garavalia v. Heat Controller, Inc.*, 212 Ill.App.3d 380, 387, 156 Ill.Dec. 505, 510, 570 N.E.2d 1227, 1232 (5th Dist.1991) (Rarick, J., dissenting). However, a manufacturer need

only protect against *reasonably foreseeable* uses of his product. *Id.* at 386, 156 Ill.Dec. at 509, 570 N.E.2d at 1231. Therefore, the court assumes that defendant stipulates to the *reasonable* foreseeability that a child of John's age would be able to obtain and operate a Mini–BIC lighter. To interpret the stipulation otherwise would be nonsensical.

942

duty is imposed in Illinois under the standard enunciated in the Restatement (Second) of Torts § 402A as adopted in *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965). The rule imposes strict liability, that is, liability without fault (*Lundy v. Whiting Corp.*, 93 Ill.App.3d 244, 254, 48 Ill.Dec. 752, 761, 417 N.E.2d 154, 163 (1st Dist.1981) ), on one who sells a product in a defective condition which condition renders the product unreasonably dangerous to the user or consumer who is injured by that defective product. *Suich v. H & B Printing Mach., Inc.*, 185 Ill.App.3d 863, 873, 133 Ill.Dec. 768, 775, 541 N.E.2d 1206, 1213 (1st Dist.1989). The liability is strict but not absolute; the plaintiff must still prove that the product was defective and that the defect rendered the product unreasonably dangerous. *Baltus v. Weaver Div. of Kidde & Co.*, 199 Ill.App.3d 821, 830, 145 Ill.Dec. 810, 816, 557 N.E.2d 580, 586 (1st Dist.1990).

▮ Strict liability is just one basis for a product liability suit. A plaintiff may also sue based on the negligence of the defendant. *See, e.g., Heyen v. Sanborn Mfg. Co.*, 223 Ill.App.3d 307, 165 Ill.Dec. 407, 584 N.E.2d 841 (4th Dist.1991) (discussing pleading requirements of products liability case sounding in negligence). Negligence differs from strict liability in that the fault issue surfaces for the first time—liability cannot be imposed unless plaintiff can demonstrate that the defendant was at fault for plaintiff's injuries. *Baltus*, 199 Ill.App.3d at 829, 145 Ill.Dec. at 815, 557 N.E.2d at 585; *cf. Coney v. J.L.G. Indus., Inc.*, 97 Ill.2d 104, 117–18, 73 Ill.Dec. 337, 343, 454 N.E.2d 197, 203 (1983) (discussing application of contributory negligence doctrine in strict liability cases). The elements of an action sounding in negligence are existence of a duty owed to plaintiff by defendant, a breach of that duty, proof that the breach of that duty proximately caused plaintiff's injuries, and damage to plaintiff as a result of that breach. *Ward v. K Mart Corp.*, 136 Ill.2d 132, 140, 143 Ill.Dec. 288, 291, 554 N.E.2d 223, 226 (1990).

▮ In either type of case, a product may be unreasonably dangerous in one of two ways, either the product itself is defective, or the warnings given about the product are inadequate. *McColgan v. Environmental Control Sys., Inc.*, 212 Ill.App.3d 696, 699, 156 Ill.Dec. 835, 837, 571 N.E.2d 815, 817 (1st Dist.1991) (citing *Lamkin v. Towner*, 138 Ill.2d 510, 528, 150 Ill.Dec. 562, 570, 563 N.E.2d 449, 457 (1990) ). Product liability suits thus may be grouped into three general categories: 1) manufacturing defect cases 2) design defect cases and 3) failure to warn cases. This case primarily implicates the second although the third could potentially become an issue. Yet as the issue is framed—whether a manufacturer of a disposable selectively actuatable lighter has a duty to incorporate design changes that would make the lighter child-resistant to a child of John's age or change its warnings in any respect—it is clear that the initial question that must be answered is whether the defendant owed a duty to John at all. If there is no duty in the first place, then defendant is entitled to judgment as a matter of law. Under both strict liability and negligence, determination of whether a defendant owed a duty to a plaintiff is ostensibly a question of law. *Smith v. Eli Lilly & Co.*, 137 Ill.2d 222, 265, 148 Ill.Dec. 22, 41, 560 N.E.2d 324, 343 (1990).

▮ The parties differ on what test Illinois courts apply to determine whether a manufacturer had a duty to incorporate design changes in a products liability action. In Illinois, there are two methods. First, plaintiff may introduce evidence that the product failed to perform as a reasonable consumer would expect. *Lamkin*, 138 Ill.2d at 529, 150 Ill.Dec. at 570, 563 N.E.2d at 457. This test is commonly known as the consumer-contemplation test and has been the long-standing rule in Illinois. *Smith v. American Motors Sales Corp.*, 215 Ill.App.3d 951, 159 Ill.Dec. 477, 576 N.E.2d 146 (1st Dist.1991); W. Page Keeton, *Prosser & Keeton on Torts* § 99, at 698 (5th ed. 1984). The second method, and one that has developed much more recently, supports a finding of liability if the plaintiff introduces evidence that the prod-

uct's design proximately caused his injury and defendant then fails to prove that, on the balance of the risk the benefits of the challenged design outweigh the risk of danger inherent in such designs. *Lamkin,* 138 Ill.2d at 529, 150 Ill.Dec. at 570, 563 N.E.2d at 457. This test is commonly known as the risk-benefit, risk-utility, or danger-utility test. *Prosser & Keeton on Torts,* § 99, at 698.

■ Contrary to defendant's assertion, these tests form the dual bases by which a plaintiff may prove that a manufacturer had a duty to incorporate a design change in a product liability case. *Cf. Harnischfeger Corp. v. Gleason Crane Rentals, Inc.,* 223 Ill.App.3d 444, 456–57, 165 Ill.Dec. 770, 777–78, 585 N.E.2d 166, 173–74 (5th Dist.1991) (exhaustive discussion of duty and stating that risk-benefit test applies in product liability cases). Additional support for this conclusion is gained from the Seventh Circuit's recent opinion in *Faucett v. Ingersoll–Rand Mining & Machinery Co.,* 960 F.2d 653, (7th Cir.1992), which reached the same conclusion on its way toward reversing a grant of summary judgment for defendant under the consumer-contemplation test. Undoubtedly, however, the test has its limit. When the danger is so obvious that all users should be aware of the danger, the manufacturer has no duty to incorporate the changes. *See, e.g., Lamkin,* 138 Ill.2d 510, 150 Ill.Dec. 562, 563 N.E.2d 449 (1990) (no duty to protect against child falling through window

screen); *Scoby v. Vulcan–Hart Corp.,* 211 Ill.App.3d 106, 112, 155 Ill.Dec. 536, 540, 569 N.E.2d 1147, 1151 (4th Dist.1991) (no duty to protect restaurant employee from obvious danger of hot oil in frying vat).[2]

Plaintiff does not argue that defendant had a duty under a consumer-contemplation test analysis. He does however, believe that he can demonstrate a duty existed under the risk-utility test.

■ The court is not yet able to determine whether defendant had a duty, under Illinois law, to incorporate any change in its product because there has been virtually no discovery in this case. The test itself, as framed by the Illinois Supreme Court, states that plaintiff may prove a defect by *"introducing evidence"* of the proximate cause of his injury and then the defendant may *"prove* on the balance that the benefits of the challenged design outweigh the risk of danger inherent in such designs." *Lamkin,* 138 Ill.2d at 529, 150 Ill.Dec. at 570, 563 N.E.2d at 457 (emphasis added). Both parts of the test require the appropriate party to introduce evidence to carry their burden. Drawing all reasonable inferences in plaintiff's favor, and with a record that is devoid of nearly all evidence, it is impossible for the court to say that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Moreover, any conclusion that a duty was or was not present would be untenable at best given the state of the record before the court.[3]

**2.** Defendant cites to the court the factually similar case of *Todd v. Societe Bic,* No. 90 C 5487, 1992 WL 4971, 1992 U.S. Dist. LEXIS 88 (N.D.Ill. Jan. 7, 1992), *appeal docketed,* No. 92–1201 (7th Cir. Jan. 27, 1992), as precedent holding that they have no duty to John in this case. In *Todd,* four-year old Cori Smith was playing with a similar lighter manufactured by defendant when he set Tiffany Todd's bedroom afire. Tiffany was killed in the blaze. The distinguished judge held that, based on the consumer contemplation test, defendant owed no duty to Tiffany. That court, however, had the benefit of a well-developed record. This is exactly what this court is lacking and therefore the *Todd* decision has little relevance to the decision here.

**3.** The case of *Ayers v. Johnson & Johnson Baby Prods. Co.,* 117 Wash.2d 747, 818 P.2d 1337 (1991), provides an example of how the risk-utility test can be applied. There, fifteen-

month-old David Ayers was in the process of drinking baby oil manufactured by defendant when he was startled by his mother, inhaling some of the liquid. After learning the liquid was baby oil, the mother read the label and found no warning about aspiration. She consoled herself with this and sought no treatment for her son. The baby eventually suffered brain damage after treatment for reduced lung capacity as a result of the inhaled baby oil. *Id.* at 751–52, 818 P.2d at 1339.

The Washington Supreme Court followed a risk-utility analysis and held that although the likelihood of injury was very small, the burden of placing an additional warning on the bottle was small and the magnitude of harm was immense. *Id.* at 765, 818 P.2d at 1346. Therefore, the court held there was a duty to place warnings on the bottle and affirmed the jury's verdict for the plaintiff. *Id.* at 771, 818 P.2d at 1349.

Even Professor Keeton implicitly agrees that an evidentiary review is necessary.

But in essence, the danger-utility test directs attention of attorneys, trial judges, and juries to the necessity for weighing the danger-in-fact of a particular feature of a product against its utility. Under this test, a product can be said to be defective in the kind of way that makes it "unreasonably dangerous" if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product.

*Prosser & Keeton on Torts* § 99, at 699. This necessarily implies that there is evidence of the danger-in-fact and the utility of the product. Given the stipulation and stay of discovery in this case, the court has no such evidence. Therefore, a question of fact prevents summary judgment.

An example illustrates the point. An Illinoisan is at the Lakehurst, New Jersey Naval Air Station at 7:25 p.m. on May 6, 1937, watching the Hindenburg dirigible moor. He is injured when the zeppelin erupts in a fire-ball as its thousands of cubic feet of hydrogen gas burn as the steel-framed behemoth crashes to the ground. *See Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 974–77 (2d Cir.1980) (copyright case over book based on Hindenburg disaster). Our plaintiff files suit in federal court alleging products liability actions against the manufacturer and operator in strict liability and negligence. The defendants move for summary judgment claiming there was no duty to change Graf Zeppelin I to protect a bystander but stipulate that plaintiff was a foreseeable plaintiff. Under the modern-day risk-utility test, the court cannot determine if there was a duty to incorporate any change in the machine until there is evidence of the risk and the utility of the product. Then and only then, may the court make a determination of duty.

There could conceivably be two exceptions to this rule. First, when it is not reasonably foreseeable that a person would be injured by the product, even if the product were assumed to be defective as de-signed, no duty could attach. Second, if the state-of-the-art at the time can be shown to be such that it was not possible to design the product in such a way to make it safer, that too might be capable of legal resolution without reference to any facts of an individual case.

To be clear, however, this court does not hold that duty is a question of fact. Quite the contrary, in a products liability action based on defective design, duty is a question of law. *Smith*, 137 Ill.2d at 265, 148 Ill.Dec. at 41, 560 N.E.2d at 343. However, a court may not make the legal determination of balancing the benefits and dangers of a product's proposed modification unless the court knows what the benefits, dangers, and costs are. Without evidence to that effect, the court cannot make the legal determination of duty. Because this issue presents a genuine issue of material fact, the court need not discuss the other bases for the motion.

## CONCLUSION

As there are genuine issues of material fact present, defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c), is denied.

IT IS SO ORDERED.